IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | 1:15cr11-1 |
| v. | ) | **Electronic Filing** |
| | ) | |
| **JAMES LAMONT JOHNSON** | ) | |

## MEMORANDUM OPINION

On March 11, 2015, a grand jury returned a twelve-count indictment charging James Lamont Johnson ("defendant") and a co-defendant. The indictment charges defendant at Count One with conspiracy to defraud the United States through the submission of false claims for income tax refunds, from in and around January, 2011, and continuing thereafter until in and around May, 2012, in violation of 18 U.S.C. § 286 and at Count Two with theft of government property from in and around January, 2011, and continuing thereafter until in and around May, 2012, in violation of 18 U.S.C. §§ 641 and 2. Defendant is charged at counts three through twelve with aggravated identity theft, on or about September 15, 2011 through September 20, 2011, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2. Presently before the court are defendant's Motion for a Bill of Particulars, Motion to Preserve Investigative Notes, Motion for Early Release of Jencks Act Material and Motion to Disclose and Exclude Uncharged Other Crimes, Wrongs, or Acts. For the reasons set forth below, defendant's motions will be granted in part and denied in part.

Defendant has filed a Motion for Early Disclosure of Jencks Act Material. In the motion defendant requests information that extends well beyond the confines of the Jencks Act. For example, defendant seeks the disclosure of "important discovery material in the form of

cooperating witness and eyewitness testimony" and notes that the disclosure of such materials can be compelled "in order to guarantee Defendant a fair trial and an even playing field." Defendant asserts that this material must be obtained with sufficient time to review the material and conduct any appropriate inquiry.

It is apparent that defendant has blurred the lines between the various forms of authorized discovery and disclosure under the Jencks Act. It also is apparent that an understanding of the disclosures that can be compelled is a prerequisite to delineating the information that is beyond the court's ability to do so. Consequently, the court will treat defendant's motion as one seeking all forms of permissible disclosures.

The government has filed a response acknowledging its obligations under the Jencks Act and the corresponding obligation under Federal Rule of Criminal Procedure 26.2. In doing so it implicitly asserts that its primary obligation to produce such information is only after direct testimony by a witness has been provided. From this premise the government argues that the defendant's request for this information is premature at this time. It otherwise fails to address the breadth of defendant's requests.

Of course, it would appear to be shortsighted for this court to follow suit. Accordingly, it will treat defendant's motion as seeking all disclosures available under Rule 16, <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972), and the Jencks Act.

To the extent defendant's motion seeks the disclosure of statements, information and things beyond (1) that which the government has made or has agreed to make available and (2) the dictates that flow from Rule 16 and <u>Brady</u>, the motion will be denied for a number of reasons. First, in responding to the motion for a bill of particulars the government has

2

acknowledged its Rule 16 obligations and has indicated it has complied and will continue to comply with those obligations fully. Rule 16 was not designed to provide a defendant with a vehicle to discover the government's case in detail or the strategy it intends to pursue at trial. United States v. Fioravanti, 412 F.2d 407, 410 (3d Cir.), cert. denied, 396 U.S. 837 (1969). Nor is the rule designed to provide a defendant with verification that the use of anticipated evidence at trial by the defense is not vulnerable to attack by evidence within the government's possession. United States v. Randolph, 456 F.2d 132, 136 (3d Cir.), cert. denied, 408 U.S. 926 (1972). In fact, in sharp contrast with these propositions, the United States Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas delineated in Rule 16, "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." United States v. Ramos, 27 F.3d 65, 67-68 (3d Cir. 1994). As a general matter these other areas are limited to the Jencks Act and materials available pursuant to the so-called "Brady doctrine." Id. at 68.[1]

Second, the government has no obligation to produce an outline of the evidence it will offer at trial. A defendant is not entitled to conduct a wholesale review of the government's investigation. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977) (there is no general constitutional right to discovery in a criminal case). Nor is a defendant entitled to obtain a list of the government's witnesses through discovery. See United States v. DePasquale, 740 F.2d 1282, 1294 (3d Cir. 1984), cert. denied, 469 U.S. 1228 (1985). Similarly, there is no authority to support a defendant's request for the specifics of each government witness' proposed testimony. See Fioravanti, 412 F.2d at 410 (a defendant has no right to discover the minutia of the

---

[1] The Jencks Act provides that any statement or report made by a government witness which relates to the subject matter of the witness' testimony must be disclosed after the witness has testified under direct examination. See 18 U.S.C. § 3500(b).

government's evidence or the manner in which it will be used). And even assuming arguendo that this court has some residual discretion to order the pretrial disclosure of the government's evidence in appropriate circumstances, the current record falls woefully short of presenting sufficient grounds to justify such an extraordinary measure.

Third, the statements of co-conspirators, whether indicted or not, are not available to the defendant under Rule 16. 8 J. Moore, MOORE'S FEDERAL PRACTICE, 16.04[1], 16-64. Every circuit court to address the issue has held that such statements are not discoverable under Rule 16 and that disclosure of such statements is governed by the Jencks Act, regardless of whether the co-conspirator will be called as a witness. See United States v. Tarantino, 846 F.2d 1384, 1418 (D.C. Cir.), cert. denied, 488 U.S. 840 (1988); United States v. Roberts, 811 F.2d 257, 258 (4th Cir. 1987) (en banc); United States v. Diaz, 834 F.2d 287 (2d Cir. 1987), cert. denied, 488 U.S. 817 (1988). These courts have reasoned that disclosure of such statements is governed by the Jencks Act because the government must present some witness who will testify to the unavailable co-conspirator's statements. Accordingly, defendant's request for pretrial disclosure of statements to the extent they can be conceived as co-conspirator statements through the review of records and information bearing on any non-witness declarants whose statements may be offered at trial must be denied.[2]

Another area potentially remaining in dispute concerns the disclosure of impeachment material. As a general matter, a defendant's requests for impeachment material such as the criminal records of and promises or inducements made to prospective government witnesses raise issues under Brady and the Jencks Act. In Brady v. Maryland, 373 U.S. 83 (1963), the

---

[2] In contrast, to the extent the government has information that significantly undermines the truthfulness of a critical non-witness declarant, such information may well fall within the scope of Brady even though discovery of the specific statement is not otherwise available.

4

Supreme Court held that due process requires the disclosure of "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. The Supreme Court subsequently held that evidence which may be used to impeach the testimony of a government witness falls within the ambit of Brady when the credibility of the witness may have an effect on the jury's determination of guilt or innocence. See Giglio v. United States, 405 U.S. 150, 154 (1972); see also United States v. Starusko, 729 F.2d 256, 260 (3d Cir. 1984); Ramos, 27 F.3d at 68 (Brady material includes "materials that might affect the jury's judgment of the credibility of a crucial prosecution witness") (quoting United States v. Hill, 976 F.2d 132, 134-35 (3d Cir. 1992)). In United States v. Agurs, 427 U.S. 97, 107 (1976), the Supreme Court modified the Brady rule to require the government to disclose exculpatory evidence even when the defendant has not requested the information. Id. at 107; see also United States v. Perdomo, 929 F.2d 967, 970 (3d Cir. 1991).

The so-called Brady doctrine generally is understood as a rule of minimum fairness. United States v. Higgs, 713 F.2d 39, 42 (3d Cir. 1983), cert. denied, 464 U.S. 1048 (1984). It establishes a prosecutorial obligation rather than a general rule of pretrial discovery. The government thus has an obligation to produce favorable material bearing on a defendant's culpability or punishment as well as material bearing on the credibility of any witness who will be used to establish material matters at trial. This obligation is not to be used, however, to permit a defendant to obtain wholesale discovery of the government's principal case. See Higgs, 713 F.2d at 42; United States v. Bocra, 623 F.2d 281, 285 (3d Cir. 1980).

It is well-settled that the government's obligations under Brady require it to disclose actual exculpatory evidence without undue delay. Brady impeachment material ordinarily must

5

be disclosed "in time for its effective use at trial." Higgs, 713 F.3d at 44; United States v. Blackwell, 954 F. Supp. 944, 968 (D.N.J. 1997). A district court has general discretionary authority to order the pretrial disclosure of Brady impeachment material and that discretion is to be exercised in a manner which "ensure[s] the effective administration of the criminal justice system." Government of Virgin Islands v. Martinez, 847 F.2d 125, 127 (3d Cir. 1988); Blackwell, 954 F. Supp. at 968. It is apparent that the government has interpreted defendant's motion in a manner that will permit it to turn over any such material when it produces its Jencks Act material, ten business days prior to trial.

While the court recognized in Higgs that a defendant's due process rights to a fair trial are not violated where the disclosure of Brady impeachment material occurs in time to be used effectively, subsequent cases by the Third Circuit have reiterated and encouraged adherence to the long-standing policy of promoting the early production of all types of Brady material, including impeachment and so-called Higgs materials. See Starusko, 729 F.2d at 261 (citing United States ex rel. Marzeno v. Gengler, 574 F.2d 730, 739 (3d Cir. 1978); United States v. Kaplan, 554 F.2d 577, 578 (3d Cir. 1977)); see also United States v. Giampa, 904 F. Supp. 235, 281 (D.N.J. 1995); Blackwell, 954 F. Supp. at 968. The government's early production of Higgs-type impeachment material may well overlap with its subsequent production under the Jencks Act and provide defendant with "advanced" notice of certain witnesses the government intends to use at trial. Nevertheless, the court notes that after disclosure is made defense counsel can more fully advise his client regarding the appropriate development of the case, including consideration of any plea agreement offered by the government. In light of all of the circumstances, the government is encouraged to disclose all Brady impeachment material without further delay, and in any event it will be ordered to produce all such material no later

than ten business days prior to trial.[3]

Defendant also moves for timely notice of any prior bad acts the government intends to introduce pursuant to Rule 404(b). Another area potentially remaining in dispute concerns the disclosure of impeachment material. As a general matter, a defendant's requests for impeachment material such as the criminal records of and promises or inducements made to prospective government witnesses raise issues under Brady and the Jencks Act. In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that due process requires the disclosure of "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. The Supreme Court subsequently held that evidence which may be used to impeach the testimony of a government witness falls within the ambit of Brady when the credibility of the witness may have an effect on the jury's determination of guilt or innocence. See Giglio v. United States, 405 U.S. 150, 154 (1972); see also United States v. Starusko, 729 F.2d 256, 260 (3d Cir. 1984); Ramos, 27 F.3d at 68 (Brady material includes "materials that might affect the jury's judgment of the credibility of a crucial prosecution witness") (quoting United States v. Hill, 976 F.2d 132, 134-35 (3d Cir. 1992)). In United States v. Agurs, 427 U.S. 97, 107 (1976), the Supreme Court modified the Brady rule to require the government to disclose exculpatory

---

[3] Of course, this ruling has no bearing on the government's disclosure of information that falls solely under the Jencks Act. It is well-settled that the plain language of the Jencks Act precludes a court from compelling the disclosure of Jencks Act material prior to the completion of a government witness' testimony on direct examination. See United States v. Hill, 976 F.2d 132, 140 (3d Cir. 1992); United States v. Murphy, 569 F.2d 771, 773 (3d. Cir.), cert. denied, 435 U.S. 955 (1978). Although courts lack the authority to order the early disclosure of Jencks material, the Third Circuit nevertheless has endorsed and encouraged the government's prevailing practice of committing to disclose Jencks material prior to trial. See Murphy, 569 F.2d at 773; Hill, 976 F.2d at 140. The government is encouraged to comply with the representation that it will disclose all Jenck's material not falling within the scope of other aspects of this court's order five business days prior to trial.

evidence even when the defendant has not requested the information. Id. at 107; see also United States v. Perdomo, 929 F.2d 967, 970 (3d Cir. 1991).

The so-called Brady doctrine generally is understood as a rule of minimum fairness. United States v. Higgs, 713 F.2d 39, 42 (3d Cir. 1983), cert. denied, 464 U.S. 1048 (1984). It establishes a prosecutorial obligation rather than a general rule of pretrial discovery. The government thus has an obligation to produce favorable material bearing on a defendant's culpability or punishment as well as material bearing on the credibility of any witness who will be used to establish material matters at trial. This obligation is not to be used, however, to permit a defendant to obtain wholesale discovery of the government's principal case. See Higgs, 713 F.2d at 42; United States v. Bocra, 623 F.2d 281, 285 (3d Cir. 1980).

It is well-settled that the government's obligations under Brady require it to disclose actual exculpatory evidence without undue delay. Brady impeachment material ordinarily must be disclosed "in time for its effective use at trial." Higgs, 713 F.3d at 44; United States v. Blackwell, 954 F. Supp. 944, 968 (D.N.J. 1997). A district court has general discretionary authority to order the pretrial disclosure of Brady impeachment material and that discretion is to be exercised in a manner which "ensure[s] the effective administration of the criminal justice system." Government of Virgin Islands v. Martinez, 847 F.2d 125, 127 (3d Cir. 1988); Blackwell, 954 F. Supp. at 968. As to this material, the government requests leeway to turn it over when it produces its Jencks Act material, ten business days prior to trial.

While the court recognized in Higgs that a defendant's due process rights to a fair trial are not violated where the disclosure of Brady impeachment material occurs in time to be used effectively, subsequent cases by the Third Circuit have reiterated and encouraged adherence to the long-standing policy of promoting the early production of all types of Brady material,

8

including impeachment and so-called Higgs materials. See Starusko, 729 F.2d at 261 (citing United States ex rel. Marzeno v. Gengler, 574 F.2d 730, 739 (3d Cir. 1978); United States v. Kaplan, 554 F.2d 577, 578 (3d Cir. 1977)); see also United States v. Giampa, 904 F. Supp. 235, 281 (D.N.J. 1995); Blackwell, 954 F. Supp. at 968. The government's early production of Higgs-type impeachment material may well overlap with its subsequent production under the Jencks Act and provide defendant with "advanced" notice of certain witnesses the government intends to use at trial. Nevertheless, the court notes that after disclosure is made defense counsel can more fully advise his client regarding the appropriate development of the case, including consideration of any plea agreement offered by the government. In light of all of the circumstances, the government is encouraged to disclose all Brady impeachment material without further delay, and in any event it will be ordered to produce all such material no later than ten business days prior to trial.[4]

Defendant also moves for timely notice of any prior bad acts the government intends to introduce pursuant to Rule 404(b). The government responds that a trial has not been scheduled, but when a date is set it will comply with Rule 404(b)'s notice and timing requirements.

The government is required to give notice of its intention to use Fed. R. Evid. 404(b) evidence prior to trial. Rule 404(b) specifically provides "that upon request by the accused the

---

[4] Of course, this ruling has no bearing on the government's disclosure of information that falls solely under the Jencks Act. It is well-settled that the plain language of the Jencks Act precludes a court from compelling the disclosure of Jencks Act material prior to the completion of a government witness' testimony on direct examination. See United States v. Hill, 976 F.2d 132, 140 (3d Cir. 1992); United States v. Murphy, 569 F.2d 771, 773 (3d. Cir.), cert. denied, 435 U.S. 955 (1978). Although courts lack the authority to order the early disclosure of Jencks material, the Third Circuit nevertheless has endorsed and encouraged the government's prevailing practice of committing to disclose Jencks material prior to trial. See Murphy, 569 F.2d at 773; Hill, 976 F.2d at 140. The government is encouraged to comply with the representation that it will disclose all Jenck's material not falling within the scope of other aspects of this court's order five business days prior to trial.

9

prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any evidence it intends to introduce at trial."

The rule requires only the disclosure of the general nature of the evidence the government intends to introduce. A demand for specific evidentiary detail, such as dates, times, places and persons involved is overly broad. See United States v. Alex, 791 F. Supp. 723 (N.D. Ill. 1992). Thus, the disclosure of "the general nature" of such evidence is that which is sufficient to put a defendant on notice as to which of his or her past episodes of conduct may be used by the government at trial.

What constitutes "reasonable notice in advance of trial" is determined by the circumstances and complexity of the prosecution. In Alex, the court ordered disclosure of Rule 404(b) evidence seven days prior to trial. In contrast, the court in United States v. Williams, 792 F. Supp. 1120, 1133 (S.D. Ind. 1992), noted generally that disclosure within ten days prior to trial constitutes reasonable advanced notice. Similarly, in United States v. Evangelista, 813 F. Supp. 294, 302 (D.N.J. 1993), the court ruled that disclosure ten business days prior to trial is sufficient notice.

Here, the rule provides defendant with the right to formal notice of all potential Rule 404(b) evidence which the government intends to introduce at trial. Accordingly, the court will grant the defendant's Rule 404(b) motion and direct the government to provide the required general notice no later than ten business days prior to trial.

Defendant seeks a bill of particulars, contending he is entitled to certain categories of information in order to prepare for trial and gain an understanding of the scope of the alleged conspiracy. Specifically, he requests the government to provide: (1) the dates on which both he and his alleged co-conspirator are alleged to have joined the conspiracy, (2) all overt acts not

already identified in the indictment, including dates, locations, and participants in meetings and conversations allegedly committed in furtherance of the conspiratorial agreement, and (3) the dates, times, and places at which defendant is alleged to have combined, conspired, confederated, and agreed with his alleged co-defendant to commit the charged offenses. The government opposes the motion on the grounds that the indictment sufficiently informs defendant of the charges against him and it has provided ample discovery that makes clear the illegal conduct that is subject of the indictment.

A bill of particulars should be granted when the indictment is so vague that it fails to advise the defendant of the nature of the charges. United States v. Addonizio, 451 F.2d 49, 64 (3d Cir.), cert. denied, 405 U.S. 936 (1972). In Addonizio, the Third Circuit set forth three general scenarios where a bill of particulars is appropriate: (1) to inform the defendant of the nature of the charges being brought against him so that he may adequately prepare his defense; (2) to avoid undue surprise at trial; and (3) to protect against double jeopardy because of an inadequately described offense. Addonizio, 451 F.2d at 63-64. In other words, a bill of particulars may be used to inform the defendant of the nature of the charges so that he or she may prepare an adequate defense, avoid surprise during trial and protect against any potential second prosecution for the same offense. United States v. Rosa, 891 F.2d 1063, 1065 (3d Cir. 1989).

The purpose of a bill of particulars is to provide the defendant with the minimum amount of information necessary to allow the preparation of an adequate defense. It is not intended to equip a defendant with the fruits of the government's investigation. United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985). Where the indictment provides sufficient information to place the defendant on notice of the charged criminal conduct, requests seeking the "when, where and

how" of any overt acts are "tantamount to a request for wholesale discovery of the government's evidence[,]" and therefore properly are denied. United States v. Adusei, 2009 WL 2045619 *8 (W.D. Pa. July 14, 2009) (Diamond, J.) (citing United States v. Armocida, 515 F.2d 49, 54 (3d Cir. 1975)).

"In ascertaining whether a bill of particulars is appropriate, the court may consider not only the indictment, but also all the information which has been made available to the defendant." United States v. Fischbach & Moore, Inc., 476 F. Supp. 1384, 1389 (W.D. Pa. 1983) (citing United States v. Kenny, 462 F.2d 1205, 1212 (3d Cir. 1972), cert. denied, 409 U.S. 914 (1972)). The motion properly is denied where the record as a whole demonstrates that ample opportunity exists for adequate preparation of the defense. Kenny, 462 F.2d at 1212.

The record provides defendant with the particulars of the offense in more than sufficient detail. First, the indictment at Count one provides 1) the specific dates defining the duration of the alleged offenses – from in and around January 2011, and continuing thereafter until in and around May, 2012; 2) components of the manner and means of conspiracy, including knowingly and unlawfully obtaining the identification of other persons; using those identifications to prepare and electronically file false and fictitious tax returns; requesting prepaid debit refund cards and refund checks be mailed to addresses under defendants' control; forging signature endorsements and counter-signing the refund checks in order to cash or deposit the refunds; and using the prepaid debit cards to obtain cash for defendants' own personal expenses and purposes; and 3) the federal laws allegedly violated by such conduct. Count Two provides: 1) the specific dates defining the duration of the alleged offense – from in and around January, 2011, and continuing thereafter until in and around May, 2012; 2) a description of the offense indicating that defendant and his alleged co-conspirator purportedly embezzled, stole, purloined, and

knowingly converted to their own use money or a thing of value, and 3) an allegation that defendants did steal and knowingly convert to their own use money from the United States Department of the Treasury in the form of electronic or paper IRS tax refunds in an amount exceeding $1,000.00. Counts three through twelve provide the dates of specific transactions involving the filing of false returns in the names of others and the social security numbers utilized in doing so.

This detail more than sufficiently identifies the elements of each offense, fairly informs defendant of the charges against him and will permit him to plead a conviction or acquittal on the charges as a bar to subsequent prosecution for the same offenses. Thus, the indictment supplies the legal quantum of information necessary for defendant to prepare for trial and protect himself against a subsequent prosecution barred by double jeopardy. See United States v. Manfredi, 628 F. Supp.2d 608, 619-20 (W.D. Pa. 2009) ("An indictment is generally deemed sufficient if it: (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.") (citing United States v. Vitillo, 490 F.3d 314, 321 (3d Cir. 2007), United States v. Rankin, 870 F.2d 109, 112 (3d Cir. 1989) and United States v. Resendiz–Ponce, 549 U.S. 102 (2007)); accord United States v. Kemp, 500 F.3d 257, 280 (3d Cir. 2007) ("Moreover, no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.") (quoting United States v. Rankin, 870 F.2d 109, 112 (3d Cir. 1989)).

Second, the government has provided defendant with a significant amount of discovery,

including a copy of: (1) an IRS Memorandum of Interview dated January 15, 2014, containing defendant's confession, (2) a CD reflecting telephone recordings wherein defendant and his alleged co-conspirator were discussing aspects of the alleged conspiracy, (3) four summary reports from Northeast Ohio Corrections Center pertaining to recorded telephone calls between September 20, 2012, and May 1 2013, and (4) an "Appendix A" spreadsheet of every false claim filed by defendant and his alleged co-conspirator that includes: the tax period, the specific falsified W-2 form used to support the false claim(s), the amount refunded, the date the refund arrived, the Internet protocol address associated with the false return, the Internet service provider used when the false return was electronically filed, the specific identity of each victim and the street address where the refunds were sent, and the amount of each false claim fraudulently obtained by defendants. In addition, the government has extended to defense counsel the ability "to inspect and copy all tangible books, papers, documents, buildings, or places which are in the possession, custody, or control of the government and (a) are material to preparation of defendant's defense, (b) are intended for use by the government as evidence in chief at trial, or (c) were obtained from or belong to the defendant."

Access to the documents and witnesses the government primarily will rely on to construct its case obviates the need for a bill of particulars. United States v. Urban, 404 F.3d 754, 772 (3d Cir. 2005) (citing United States v. Giese, 597 F.2d 1170, 1180 (9th Cir. 1979) ("Full discovery . . . obviates the need for a bill of particulars."). It is readily apparent that defendant already has been given access to the core information that will be used to construct the government's case-in-chief. More specifically, he has been given access to many of the details underlying each charge. Defendant is not entitled to the nuances of the government's theories and trial strategies.

It follows that the information already disclosed to defendant more than provides the

particulars of the alleged offenses and his ability to prepare an adequate defense has not been impaired.  Consequently, defendant's motion for a bill of particulars must be denied.

Defendant requests an order directing all government agents and law enforcement officials involved in any aspect of this case to preserve all rough notes made during the course of the investigation.  He further requests that any such materials be reviewed for statements or information falling within Brady or Jencks Act.

The government indicates it already has instructed its agents to preserve these materials.  It further indicates that it will produce them if appropriate as part of its Brady and Jencks disclosures.

In United States v. Vella, 562 F.2d 275 (3d Cir. 1977), the Third Circuit held that "rough interview notes of [law enforcement officers] should be kept and produced so that the trial court can determine whether the notes should be made available to the defendant under the rule in Brady . . . or the Jencks Act."  Id. at 276.  In United States v. Ammar, 714 F.2d 238 (3d Cir. 1983), the court acknowledged that a rough draft is not necessarily a Jencks Act statement until it is refined to the point where a finding can be made that the witness has "adopted or approved" the rough draft as a statement, such as where a law enforcement official presents a handwritten draft to a supervisor.  Nevertheless, the court held that "the government must retain and, upon motion, make available to the district court both the rough notes and the drafts of reports of its agents to facilitate the district court's determination of whether they should be produced."  Id. at 259.  The court also cautioned that "the government must be vigilant in observing its responsibility to preserve these materials because the Supreme Court has cautioned that the harmless error doctrine must be strictly applied in Jencks Act cases."  Id. at 260 (citations omitted).

Defendant's request for an order requiring all government agents to preserve their rough notes and writings will be granted. Defendant is entitled to the discovery of such material only to the extent that it falls within the purview of Brady and/or the Jencks Act. To the extent any rough notes and investigative reports fall within these limited areas of disclosure, the government shall produce them in accordance with this memorandum and order of court. To the extent defendant seeks the production of any rough notes and investigative reports not falling within those limited areas of disclosure, the motion will be denied without prejudice to renew at trial subject to a specific showing that any particular rough notes or investigative reports not otherwise produced arguably may contain information falling within the scope of Brady and/or the Jencks Act.

For the reasons set forth above, defendant's pretrial motions will be granted in part and denied in part. An appropriate order will follow.

Date: October 27, 2016

          s/David Stewart Cercone
          David Stewart Cercone
          United States District Judge


cc:    Marshall Piccinini, AUSA
       Frank C. Walker, II, Esquire

       United States Marshal's Office
       United States Probation Office

       (Via CM/ECF Electronic Filing)